**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE  19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

**JACK B. BLUMENFELD**
(302) 351-9291
(302) 425-3012 FAX
jblumenfeld@mnat.com

May 23, 2019

The Honorable Sherry R. Fallon                                                                        *VIA ELECTRONIC FILING*
United States District Court
  for the District of Delaware
844 North King Street
Wilmington, DE  19801

        Re:    *XMTT, Inc. v. Intel Corporation*
                C.A. No. 18-1810 (RGA) (SRF)

Dear Judge Fallon:

      Defendant Intel Corporation ("Intel") requests the Court's assistance in resolving the disputes delineated below with respect to a proposed Protective Order.  The Protective Order, with the parties' competing proposals noted, is attached as Exhibit A.

**I.      The Court Should Adopt Intel's Proposed Definition Of Relevant Technology, Which Aligns With The Technology XMTT Has Accused (Paragraph 15)**

      The parties agree that a definition of Relevant Technology is necessary to define the scope of the Prosecution and Development Bar and how an individual serving as the Litigation Manager (i.e., a Party employee who oversees the litigation but is not participating in preparing or prosecuting any patent or patent application related to the Relevant Technology, pursuant to Ex. A ¶ 12) can use the confidential information that Intel produces in this case.  Intel based its definition on the technology XMTT has accused of infringement and placed at issue in this case: "Computer architecture for hybrid serial and parallel computing systems."  On the other hand, XMTT's proposed definition focuses only on "[c]omputer **memory** architecture for hybrid serial and parallel computing systems."  That definition is insufficient to capture the range of features in Intel's products that XMTT highlighted in its complaint, which go beyond memory architecture, and as to which XMTT seeks discovery.  *See, e.g.*, XMTT's Complaint for Patent Infringement (D.I. 1) ¶¶ 17-26, 45-57.

      XMTT's definition ignores one of the primary purposes of the Protective Order:  to "protect information the parties are entitled to keep confidential."  Ex. A at 1.  XMTT has

The Honorable Sherry R. Fallon
May 23, 2019
Page 2

accused numerous, large families of processors of infringing its patents and, as a result, seeks access to Intel's highly confidential specifications, Source Code, and other documentation related to those products. Based on the allegations in its complaint, XMTT requests access to highly confidential information that goes far beyond memory architecture, and any attorney, expert witness, consultant, or other party who views or inspects those documents on behalf of XMTT will have access to such information. Thus, Intel requests that the Court adopt a definition of Relevant Technology that will adequately protect the information XMTT asks Intel to produce in this case by placing proper limits on the individuals who are allowed to access its confidential materials and how those individuals may use the information they access.

II. **The Court Should Adopt Intel's Proposed Scope Of The Prosecution And Development Bar To Provide Sufficient Protection For Intel's Highly Confidential Information (Paragraph 35)**

Intel proposes that the Prosecution And Development Bar should state that any individuals from the Receiving party "who personally review any technical ATTORNEYS' EYES ONLY Material or OUTSIDE COUNSEL RESTRICTED – SOURCE CODE Material from the Producing Party are prohibited from participating in the preparation or prosecution of any patent, patent application, or from drafting or revising a patent claim **related** to the Relevant Technology that was filed, or that claims priority from an application that was filed, less than one year following the final termination of this action (including any appeals)." XMTT proposes a narrower bar by replacing the word "related" with "directed."

Intel requests that the Court adopt its proposed language for substantially the same reasons as expressed in Section I above. XMTT is accusing a large number of Intel's processors. Intel is a company built around its innovations in processor design. In the course of this lawsuit, XMTT, its attorneys, expert witnesses, consultants, and other personnel will potentially have the opportunity to view Intel's confidential specifications, Source Code, and other information underlying the design of its processors. The risk to Intel in disclosing such information to attorneys, expert witnesses, and/or other sophisticated individuals does not only arise in connection with claims specifically directed to the Related Technology but also in connection with claims *related* to such technology. Intel therefore requests that the Court adopt its proposed language so that the Prosecution And Development Bar is sufficiently broad to protect Intel's sensitive technical information.

III. **The Court should adopt Intel's Proposed Location Of The Secure Room For Source Code Inspection (Paragraph 23)**

Intel has proposed two locations for a Secure Room for the inspection of its Source Code: the office of its lead counsel, Desmarais LLP, in New York, or the office of its Delaware counsel, Morris, Nichols, Arsht & Tunnell LLP, in Wilmington. Either option constitutes a convenient location for the parties. Hosting the review in New York would allow Intel's lead counsel to monitor the review, with the assistance of its IT personnel, which it is entitled to do under the proposed Protective Order. *See, e.g.*, Ex. A ¶ 26. And both parties have retained counsel in Wilmington, where XMTT chose to file this action.

The Honorable Sherry R. Fallon
May 23, 2019
Page 2

XMTT, on the other hand, proposes locating the Secure Room at either a yet to be determined location in Los Angeles or at Desmarais LLP's newly-opened office in San Francisco. Neither location has any connection with this action. It appears that XMTT proposed Los Angeles solely for the convenience of its lead counsel, Irell & Manella LLP, which is in Los Angeles. But XMTT chose to sue Intel in Delaware, not in California. XMTT's decision to hire a law firm on the other side of the country from both itself (XMTT is in Maryland) and its chosen forum should not determine the location of Source Code review. And although Desmarais LLP has a brand new office in San Francisco, opened earlier this year, it does not yet have IT service professionals on site full-time. If technical issues arise with the Source Code computer during review, Desmarais LLP's New York-based IT personnel would likely have to travel from New York City to resolve the issues, potentially interrupting or delaying the review.

Accordingly, Intel requests that the Court order the Source Code review to take place at Desmarais LLP's office in New York or at Morris Nichols Arsht & Tunnell LLP's office in Wilmington.

### IV.  The Court Should Adopt Intel's Proposed Procedures For The Use Of Source Code At Depositions (Paragraph 32)

Intel proposes that if XMTT wishes to use printouts of Source Code at depositions, it notify Intel five days before the deposition of the pages it intends to use, and Intel will bring printed copies of those pages to the deposition. Alternatively, XMTT may request that Intel bring a stand-alone computer loaded with the produced Source Code to the deposition. Intel's proposal is consistent with two Protective Orders recently entered in cases in this District in which Intel is a party and the plaintiff's counsel was Irell & Manella, XMTT's counsel here. *See Intel Corporation v. Future Link Systems LLC,* C.A.14-377, D.I. 56; *VLSI Technology LLC v. Intel Corporation*, C.A.18-966, D.I. 96.

In contrast, XMTT proposes that it be allowed to make its own copies of Source Code printouts and transport them to the deposition location. XMTT's proposal undermines the mutually agreed upon provisions of the proposed Protective Order that are specifically intended to prevent the accidental loss or disclosure of Intel's highly confidential Source Code. XMTT has accused dozens of Intel processors of infringement and has requested access to some of Intel's most confidential information about those products. Consequently, Paragraphs 27, 28, and 30 of the Protective Order detail how XMTT must obtain and store printed copies of Source Code: Although XMTT can make printouts of portions of Source Code it believes are reasonably necessary for filings, expert reports, depositions, or hearings, XMTT is not allowed to remove those copies from the Secure Room. Instead, Intel will collect the printed Source Code from the Secure Room and hand-deliver copies to XMTT. In addition, XMTT must maintain that printed Source Code "at all times in the office(s) of Counsel of Record," and the Source Code "sets must be kept in a locked storage container." These provisions are intended to prevent XMTT from losing or inadvertently disclosing Intel's highly confidential Source Code. Allowing XMTT to remove copies of printed Source Code from the locked container in its Counsel's office, make additional copies, and transport those copies to a deposition directly undermines the agreed-upon provisions of the Stipulated Protective Order.

The Honorable Sherry R. Fallon
May 23, 2019
Page 2

      Accordingly, Intel requests that the Court adopt its proposed procedure for the use of Source Code at depositions.

                                                                                                         Respectfully,

                                                                                                     */s/ Jack B. Blumenfeld*

                                                                                                    Jack B. Blumenfeld (#1014)

JBB/bac
Attachment

cc:     Clerk of Court (via hand delivery; w/attachment)
           All Counsel of Record (via electronic mail; w/attachment)

Case 1:18-cv-01810-MFK   Document 36   Filed 05/23/19   Page 4 of 4 PageID #: 263