# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347

(302) 658-9200
(302) 658-3989 Fax

**Jack B. Blumenfeld**
(302) 351-9291
(302) 425-3012 FAX
jblumenfeld@mnat.com

July 1, 2020

The Honorable Richard G. Andrews                                  *VIA ELECTRONIC FILING*
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, DE  19801-3555

      Re:    *XMTT, Inc. v. Intel Corporation*
              C.A. No. 18-1810 (RGA)

Dear Judge Andrews:

      Defendant Intel Corporation requests the Court's assistance in resolving a dispute regarding the large number of claims Plaintiff XMTT has asserted in this case.  XMTT is presently asserting 72 overlapping claims—nearly every claim in the two asserted patents.  Both parties recognize that XMTT will not and cannot realistically assert anywhere near that number of patent claims at trial.  Thus, since early March, in order to promote efficient development of the issues in the case, Intel has repeatedly proposed mutual narrowing of asserted claims and prior art references.  Those proposals were first met with silence for more than three months, and then with rejection.  Instead, notwithstanding receipt of the Court's claim construction order more than six weeks ago (and the Court's encouragement of a claim-reduction dialogue back in April), XMTT continues to reject a mutual reduction of asserted claims and prior art references.  Accordingly, to streamline issues in the case and remaining discovery, Intel respectfully requests that the Court apply its standard practice and limit the number of asserted claims to 30, with Intel to correspondingly reduce its invalidity contentions to 30 prior art references and obviousness combinations.  *See Nox Med. EHF v. Natus Neurology Inc.*, No. 15-709-RGA, 2018 WL 845635, at *10 (D. Del. Feb. 13, 2018) ("upon application the Court will usually limit the number of asserted claims").

The Honorable Richard G. Andrews
July 1, 2020
Page 2

       **1.    Now—After Claim Construction And Before The End of Fact Discovery—Is The Right Time For An Initial Narrowing Of Asserted Claims And Prior Art.**

     Narrowing the asserted claims and prior art defenses now makes good sense. First, the Court has already construed the disputed claim terms (D.I. 124), providing clarity on claim scope and an opportunity for both parties to re-evaluate asserted claims and prior art references. Indeed, the Court encouraged such narrowing of asserted claims and prior art during the claim construction hearing. *See* Apr. 30, 2020 Markman Hr'g Tr. at 89:21-25 ("I would suggest merely that whenever it is that I issue a claim construction opinion that that would be a good time for you all to meet and confer about a timetable for some reduction soon thereafter."); *see also Wonderland Switzerland AG v. Evenflo Co., Inc.*, No. 18-1990-RGA, 2020 WL 374750, at *5 (D. Del. Jan. 23, 2020) (requesting the parties to "agree to a mutual reduction in the number of asserted claims and the amount of asserted prior art" and submit a status report within twenty-eight days after claim construction).

     Second, XMTT has had more than a year's worth of discovery from Intel, and has had ample opportunity to make an appropriate determination of the claims that it wishes to pursue. XMTT has had more than a year to study Intel's core technical documents, which were produced on May 13, 2019 (*see* D.I. 25 at 2), and has spent hundreds of hours reviewing Intel's source code, which was first made available on July 26, 2019 (*see* D.I. 82 at 1). Intel also substantially completed document production on April 3, 2020. (*See* D.I. 90.) In addition to those materials, XMTT has also had the benefit of Intel's invalidity contentions, and has further reviewed many of Intel's invalidity arguments through the course of three *inter partes* review petitions and the PTAB's responses.[1] (*See, e.g.*, D.I. 128-129.) Accordingly, XMTT has more than enough information to enable it to limit itself to 30 (or fewer) asserted claims. Against that background, it is inefficient and inconsistent with Rule 1 to force Intel to wait still further to learn which claims XMTT intends to focus on. *See, e.g., Fenster Family Patent Holdings, Inc., Elscint Ltd.*, No. 04-038 JJF, 2005 WL 2304190, at *3 (D. Del. Sept. 20, 2005) (rejecting argument that the patentee "will likely limit [the asserted claims] after full discovery" and ordering the patentee to reduce the number of asserted claims from 90 claims to 10 claims).

     Third, narrowing the claims now will enable the parties to streamline the remaining discovery and provide an opportunity to meaningfully focus expert reports. Although document production is substantially complete, party depositions have begun over the last month and numerous depositions are still yet to be taken. Limiting the asserted patent claims to a reasonable number now may allow the parties to limit depositions, and it will certainly reduce the burden of further written discovery, much of which requires claim-by-claim responses. Further, limiting the claims now will allow the parties to narrow the scope of expert reports—potentially cutting in half one of the more expensive and burdensome areas of any patent case.[2]

---

[1] The PTAB initiated an *inter partes* review on one of the patents-in-suit and Intel has moved for a stay of this case on that basis. (D.I. 128.) That motion has been fully briefed and is pending.

[2] Although the schedule provides for a narrowing of asserted claims (to 20) one month before

The Honorable Richard G. Andrews
July 1, 2020
Page 3

*See, e.g.*, *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 918 F. Supp. 2d 277, 279 (D. Del. 2013) (ordering plaintiff to narrow asserted claims from 95 to 30 where defendant argued, among other reasons, that "such narrowing would simplify experts reports").

### 2. Narrowing Admittedly Overlapping Claims Will Not Prejudice XMTT.

Moreover, narrowing the number of asserted claims from 72 to 30 claims will not prejudice XMTT because the claims admittedly overlap both in subject matter and with regard to the specific limitations and scope. Indeed, XMTT has conceded that both patents "arose out of the same series of inventions" and that the claims "have an 'extreme degree of overlap,' including 'several overlapping claim limitations.'" (D.I. 135 at 2.) Furthermore, XMTT has identified just one "chief difference" between the two asserted patents—an additional "read-only memory" term that appears in the '879 patent claims, but not the '388 patent claims. (*Id.* at 2.) Accordingly, selecting 30 asserted claims will not force XMTT to discard unique questions of validity or infringement.[3] Furthermore, in the unlikely event that unique, unforeseeable issues require resurrecting non-elected claims, Intel's proposal allows it do so on a showing of good cause (and likewise permits the same possibility for Intel with regard to prior art references). Accordingly, XMTT has not identified and cannot show any prejudice from narrowing claims at this stage. *See Masimo Corp.*, 918 F. Supp. 2d 277 at 284.

Narrowing the number of asserted claims is a routine and necessary part of nearly every patent litigation, *see, e.g.*, *Nox Med. EHF*, 2018 WL 845635, at *10 ("There are only so many arguments that a party can make in the time allotted"), and this stage of the case—after claim construction and before the close of fact discovery—is a beneficial time for such narrowing. *See, e.g.*, Apr. 30, 2020 Markman Hr'g Tr. at 89:21-25; *Wonderland Switzerland*, 2020 WL 374750, at *5. There is no reason to depart from the standard practice and allow XMTT to proceed with an unreasonable number of asserted claims in this case simply because discovery is not yet complete. Intel therefore requests that the Court limit the number of asserted claims to 30 within one week and order a corresponding limitation in the number of prior art references and obviousness combinations one week later.

---

expert reports (D.I. 25 at 2), that can provide only limited cost savings, since experts will start working well in advance of that date, and discovery will necessarily be nearly over, eviscerating the efficiency benefit of narrowing.

[3] During the parties' correspondence, XMTT contended that narrowing the asserted claims would violate due process and cause prejudice because each claim is presumed to be a different invention. That argument has no merit. It is well established that, "'[w]hile different claims are presumed to be of different scope, that does not mean that they necessarily present different questions of validity or infringement.'" *Masimo Corp.*, 918 F. Supp. 2d 277 at 284 (quoting *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1313 (Fed. Cir. 2011)). Moreover, XMTT has already agreed to narrow its claims before expert reports (*see* D.I. 24 at 2 ("Joint Proposed Scheduling Order")), thus it is clear that XMTT's refusal to narrow now is based solely on timing. *Cf. Masimo Corp.*, 918 F. Supp. 2d at 284 (rejecting the patentee's similar argument).

The Honorable Richard G. Andrews
July 1, 2020
Page 4

                                            Respectfully,

                                            */s/ Jack B. Blumenfeld*

                                            Jack B. Blumenfeld (#1014)

JBB/bac

cc:  All Counsel of Record (via electronic mail)