

July 6, 2020

**VIA E-FILING**
The Honorable Richard G. Andrews
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3555

**CONFIDENTIAL
FILED UNDER SEAL**

    Re:    *XMTT, Inc. v. Intel Corporation,* C.A. No. 18-cv-1810-RGA

Dear Judge Andrews:

    At the outset of this case, the parties raised a disagreement about narrowing of asserted claims and prior art. Intel sought a preliminary narrowing during fact discovery, followed by a final narrowing. *See* D.I. 19, at 3 (Intel's proposal). XMTT asked the Court not to impose a specific requirement, or in the alternative to at least allow the parties to complete fact discovery before narrowing claims. *See* D.I. 23 (Hearing Tr.), at 7:9-8:6. The Court resolved this disagreement with a compromise, stating: "I'll leave it for you all to discuss whether there is some intermediate point somewhere along the way, but I think having the twenty total asserted claims one month before to serve as opening expert reports, and then the defendant's election of prior art, I think I will go with that." D.I. 23 (Hearing Tr.), at 9:15-20; D.I. 25 (Scheduling Order), at 2 (requiring plaintiff to select no more than 20 total claims by one month before the service of opening expert reports). That means that approximately seven weeks from now, shortly after the close of fact discovery, XMTT will select 20 claims and the parties' experts will develop expert reports based on that limited set of claims. The parties have litigated this case for over a year with that schedule for claim selection in mind.

    Now, with fact discovery on core subjects still outstanding,[1] Intel wants to change the rules and force XMTT to reduce its asserted claims by more than half. Intel does not identify any changed circumstances that would justify overturning the Court's prior ruling on this issue. To the contrary, changes in circumstances since the scheduling conference would, if anything, justify postponing the date for claim selection, not accelerating the process. For example, as the Court is aware, Intel refused for approximately five months to present any of its employee witnesses for deposition, forcing XMTT to go to the Court for relief. As a result, many technical depositions bearing on infringement issues, including testimony of corporate representatives on key technical topics, have yet to occur. While depositions are now proceeding apace, more than a dozen Intel witnesses remain to be deposed. XMTT's review of Intel's source code was also cut short by the coronavirus pandemic in March, when Intel unilaterally halted all access. The parties are now discussing a remote review process to resume code review, but XMTT will necessarily be playing catch-up, having already lost four months of code review time. Other issues bearing on the scope of the case also remain outstanding. The pleadings are still open, as Intel has moved for leave to amend its answer to assert a new invalidity defense based on inventorship. *See* D.I. 126. Intel has also moved to stay the case pending resolution of an IPR instituted on one of the two patents-in-

---

[1] In Intel's recently-filed Motion to Stay, it characterized the case as "still in its early stages" because the "heaviest lifting, including expert discovery, dispositive motions, and trial" are "far in the future." D.I. 129, at 6. Under the current Scheduling Order, reduction of claims will occur well in advance of all of those events.

919 N. MARKET STREET, 12TH FLOOR, WILMINGTON, DE 19801
PHONE: (302) 777–0300 · FAX: (302) 777–0301 · WWW.FARNANLAW.COM

suit. *See* D.I. 128. Resolution of either of these issues would materially impact XMTT's selection of claims.

These problems with Intel's request to alter the Ordered process are not hypothetical. As Intel notes in its letter, a patentee has a due process right to assert each and every patent claim that raises "unique issues as to liability or damages." *In re Katz Interactive Call Processing Patent Litig., Inc.*, 639 F.3d 1303, 1313 (Fed. Cir. 2011). Intel argues in the abstract that different claims do not "necessarily present different questions of validity or infringement," but in this case they clearly do. For example, in response to an interrogatory from XMTT asking Intel to identify claim elements it contends are not satisfied by the accused products, Intel has raised unique non-infringement arguments for 66 different asserted claims. *See* Ex. 1 (Intel's First Supplemental Response to Interrog. No. 5), at 7-42. The PTAB also instituted Intel's IPR as to one of the asserted patents, while denying Intel's two IPRs against the other asserted patent, suggesting distinct questions of validity as well. And when XMTT raised its due process concerns and asked Intel to identify claims that it believed did not present unique issues of validity or infringement, Intel refused to identify any. *See* Ex. 2, at 4.[2]

In view of these facts, the reason Intel is attempting to accelerate the claim narrowing date now is apparent: it would prejudice XMTT by forcing it to make decisions about what claims to select for trial before it obtains discovery on key subjects. Intel, on the other hand, faces no similar crunch. It has asserted only eight total prior art references[3] and is spending its remaining fact discovery time pursuing other invalidity defenses not subject to its narrowing proposal; for example, it is pursuing numerous outstanding third party subpoenas related to its belated inventorship defense. Intel's proposal offers the sleeves off Intel's vest, while forcing XMTT to make final decisions without core facts.[4] The Court should not change its prior ruling to provide Intel with a strategic benefit.

Intel argues that overturning the Court's Order would "enable the parties to streamline the remaining discovery and provide an opportunity to meaningfully focus expert reports." Intel Ltr., at 2. First, as discussed above, Intel's proposal will have no impact on expert reports. The current Scheduling Order already requires XMTT to select no more than 20 total claims one month before opening expert reports. D.I. 25, at 2. Nor is there any inefficiency if experts begin working on expert reports in advance of that date; for example, no matter what claims XMTT selects, the experts will need to address the independent claim limitations. Second, there is no reason to expect that a reduction to 30 asserted claims will meaningfully limit the scope of remaining discovery. The remaining witnesses will be testifying regarding either core technical topics or damages-related issues (*e.g.*, financial data, licensing, etc.), which will be relevant no matter what claims

---

[2] To be clear, XMTT does not (and has not) waived its due process rights. In view of Intel's own positions demonstrating that the asserted claims present unique issues, the narrowing sought by Intel is contrary to Federal Circuit law, which is yet another reason to deny Intel's request. *See In re Katz*, 639 F.3d at 1313.

[3] Because the two Patents-in-Suit are parent/child with similar subject matter, Intel has largely charted the same references against both patents, allowing it to effectively double the number of "references and/or combinations" it will be required to select.

[4] While Intel's letter suggests that its proposal would allow the parties to revise their selections of claims or prior art for "good cause," its proposed order contains no such provision.

are selected.  Intel suggests that "written discovery" could be streamlined, but does not identify any specific request that would be narrowed or withdrawn with fewer asserted claims.

Intel's professed interest in streamlining discovery also rings hollow because Intel has resisted every attempt by XMTT to actually narrow the scope of issues to be decided in this case.  For example, months ago, XMTT proposed a straightforward stipulation regarding "U.S. nexus" that would dramatically simplify damages discovery in this case.  *See* Ex. 3 (March 31 e-mail from Rowles to Seddon).  XMTT's counsel has entered into similar stipulations with Intel in other cases without issue, but in this case Intel has refused to engage in similar negotiations and has insisted on one-sided terms that would not streamline discovery.  As another example, in view of the nearly 40 witnesses identified in Intel's Rule 26 disclosures, XMTT proposed a procedure for early identification of tentative trial witnesses in order to permit the parties to focus their efforts in discovery and potentially limit the total number of witnesses that need to be deposed.  *See, e.g.*, Ex. 3 (March 31 e-mail from Rowles to Seddon).  Intel has repeatedly rejected this sensible approach to streamlining discovery.  Additionally, in response to requests from Intel to narrow the number of accused products at issue in the case, XMTT indicated that it would be willing to stipulate to a representative products approach and asked Intel to identify representative accused products or product families.  *See* Ex. 2, at 3.  Intel refused to do so.

In sum, Intel has rejected numerous proposals by XMTT that would actually narrow the scope of discovery in an equitable manner.  Instead, the only type of narrowing that Intel will consider is a reduction in the number of asserted claims and prior art, because the asymmetrical nature of the parties' contentions provides a strategic benefit to Intel.  Meanwhile, the current Scheduling Order already provides for narrowing of claims well in advance of expert reports.  Intel has not identified any reason to deviate from the status quo and the Court should reject Intel's request to revisit its prior ruling on this very issue.

Respectfully submitted,

/s/ Brian E. Farnan

Brian E. Farnan

cc: Counsel of Record (via E-Mail)